J-A09035-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN RE: 1968 OLDSMOBILE | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: CYNTHIA VLOSIC | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1133 WDA 2024 |

Appeal from the Order Entered August 27, 2024
In the Court of Common Pleas of Lawrence County Civil Division at
No(s):  70038 of 2023, M.D.

BEFORE:  KUNSELMAN, J., NICHOLS, J., and LANE, J.

MEMORANDUM BY LANE, J.:                    **FILED: June 24, 2025**

Cynthia Vlosic ("Vlosic") appeals from the order granting the petition for the involuntary transfer of the subject 1968 Oldsmobile ("the vehicle") to McDanel Towing, LLC ("McDanel").  We affirm.

The trial court set forth the factual and procedural history of this matter as follows:

> The subject automobile, a 1968 Oldsmobile bearing VIN 384398M335150[,] is titled to Frances Vlosich [("Frances")] at the address of 1013 Charles Drive, New Castle, Lawrence County, Pennsylvania[,] pursuant to the certificate of title issued on November 7, 2003.  Frances . . . attempted to assign the title of the vehicle to [her daughter, Vlosic] on October 5, 2011, but [Vlosic] failed to file an application for a certificate of title.  Following that unsuccessful attempt to transfer title, [Vlosic] relocated to Goodyear, Arizona.
>
> The vehicle continued to be stored at Frances['] . . . residence even though [she] began residing in an assisted living facility [and remained there] until her death.  According to [Vlosic], she attempted to have the vehicle transported to Arizona which included an incident where the carrier cancelled as they

would have been overweight. [Vlosic], by her own admission, made a couple "half-hearted attempts" over the years to retrieve the vehicle.

Frances['] . . . property was then listed for sale on May 11, 2021. [Vlosic's] sister, Cheri Krieger [("Krieger")], contacted [Vlosic] and requested [that she] remove the vehicle from the property as it was being sold. [Vlosic] testified she did not make any attempt to remove the vehicle because . . . Krieger "does a lot of talking" and [Vlosic] "knew she wasn't serious." In June of 2021, . . . Krieger employed [McDanel] to remove the vehicle as the residence was being sold. On June 29, 2021, [McDanel] removed the vehicle from the Charles Drive residence and placed it in an indoor storage facility owned and operated by [McDanel]. The vehicle has remained in the facility since that date. [McDanel] testified its standard daily rate for storage of automobiles is $100.00 per day. On September 10, 2021, [Vlosic] was made aware the vehicle was moved, and, on September 29, 2021, she knew it was being stored by [McDanel]. [Vlosic] acknowledged there was a storage fee for the vehicle but made no offer to pay that fee. [On November 24, 2021, Frances died, and Krieger was appointed as the administratrix of her Estate.] [T]he Estate . . . offered to pay the storage fees so [Vlosic] could have the vehicle delivered to her[,] but [Vlosic] failed to take action on that offer.

The vehicle remained in storage with [McDanel] for another year and the Estate withdrew its offer to pay the fees accrued due to the year of storage. As a result of [Vlosic's] refusal to cooperate with the Estate . . . and [McDanel], [McDanel] filed a petition for involuntary transfer of motor vehicle on April 4, 2023. [Vlosic] filed an answer to [the] petition for involuntary transfer of motor vehicle and counterclaims on May 3, 2023, and a hearing on this matter was scheduled for July 6, 2023. However, [Vlosic] was not available on that date so the hearing was continued to August 1, 2023. [Vlosic] then filed two motions for continuance which were granted. The hearing was scheduled for September 29, 2023, but [Vlosic] requested and was granted a continuance of that matter. Ultimately, the hearing was held on October 24, 2023. The court issued an order and opinion dated December 18, 2023, but was filed on December 19, 2023, entering a judgment for possession in favor of [McDanel].

[Vlosic] then filed a notice of appeal . . . .. However, that appeal was quashed as [she] failed to file post-trial motions prior

to filing [the] notice of appeal. On May 1, 2024, Appellant filed a motion for post-trial relief and a hearing on that motion was . . . held on August 13, 2024. Following that oral argument, the court filed an order and opinion on August 27, 2024, which denied [Vlosic's] post-trial motions[ and entered judgment involuntarily transferring title to and possession of the vehicle to McDanel]. [Vlosic] then filed a [timely] notice of appeal and a [court-ordered Pa.R.A.P. 1925(b)] concise statement of errors complain[ed] of on appeal.

Trial Court Opinion, 12/4/24, at 2-4 (unnecessary capitalization omitted, formatting altered).

Vlosic raises the following issue for our review: "Did the lower court commit reversible error when it found that . . . Vlosic failed to rebut a presumption of abandonment and entered judgment for an involuntary transfer of possession of [Vlosic's] car to . . . McDanel . . .." Vlosic's Brief at 3 (footnotes omitted).

Our standard and scope of review when considering challenges to a non-jury verdict are well-settled:

Our standard of review in non-jury trials is to assess whether the findings of facts by the trial court are supported by the record and whether the trial court erred in applying the law. Upon appellate review[,] the appellate court must consider the evidence in the light most favorable to the verdict winner and reverse the trial court only where the findings are not supported by the evidence of record or are based on an error of law. Our scope of review regarding questions of law is plenary.

*Century Indem. Co. v. OneBeacon Ins. Co.*, 173 A.3d 784, 802 (Pa. Super. 2017). As fact finder, the judge has the authority to weight the testimony of each party's witnesses and to decide which are most credible. *See Skurnowicz v. Lucci*, 798 A.2d 788, 793 (Pa. Super. 2002).

Preliminarily, we observe that pursuant to our appellate rules, the appellant's arguments on appeal are limited to the issues raised in the statement of questions involved. In this regard, our appellate rules provide:

> The statement of the questions involved must state concisely the issues to be resolved, expressed in the terms and circumstances of the case but without unnecessary detail. The statement will be deemed to include every subsidiary question fairly comprised therein. ***No question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby***.

Pa.R.A.P. 2116(a) (emphasis added).

Here, although Vlosic raised several issues in her Rule 1925(b) concise statement, she raised only one issue in her statement of questions involved; namely, "did the lower court commit reversible error when it found that . . . Vlosic failed to rebut a presumption of abandonment and entered judgment for an involuntary transfer of possession of [Vlosic's] car to . . . McDanel . . . .." Vlosic's Brief at 3. Thus, to the extent that Vlosic has attempted to include other arguments in her brief that are unrelated to this issue, and are not fairly suggested thereby, we deem those other issues either waived or abandoned and decline to address them. ***See Cobbs v. SEPTA***, 985 A.2d 249, 256 (Pa. Super. 2009) (holding that issues not explicitly raised in appellant's statement of the questions involved are waived); ***see also Ramalingam v. Keller Williams Realty Grp., Inc.***, 121 A.3d 1034, 1041 n.11 (Pa. Super. 2015) (deeming issues raised in the concise statement but omitted from and not fairly comprised or suggested by the issues raised in the statement of

- 4 -

questions involved as abandoned). Instead, we confine our analysis to Vlosic's arguments related to her single issue on appeal; namely, whether she failed to rebut a presumption of abandonment.

Section 102 of the vehicle code defines an abandoned vehicle and provides, in pertinent part, as follows:

> (1) A vehicle . . . shall be presumed to be abandoned under any of the following circumstances, but the presumption is rebuttable by a preponderance of the evidence:
>
> * * * *
>
> (v) The vehicle has remained on the private property of a salvor for 20 days.

75 Pa.C.S.A. § 102.

Section 102 additionally defines a "salvor" as "a person engaged in the business of acquiring abandoned vehicles for the purpose of taking apart, recycling, selling, rebuilding or exchanging the vehicles or parts thereof." *Id*. A salvor has the right to seek an *in rem* judgment for possession of the vehicle, but it cannot demand compensation for towing or storage charges. *See Harkovich v. Pfirrmann*, 627 A.2d 776, 779 (Pa. Super. 1993). Once it is demonstrated the vehicle is abandoned as defined by section 102, a party may rebut that presumption by a preponderance of the evidence. *See* 75 Pa.C.S.A. § 102.

Vlosic claims that McDanel was not lawfully acting as a salvor when it removed the vehicle from Frances' property without Frances having either requested or approved the removal. According to Vlosic, McDanel simply

relied upon directions from a real estate agent and Krieger, neither of whom demonstrated any authority to permit removal of the vehicle from the residence.[1] Vlosic asserts that although McDanel relied on Krieger to pay the storage fees, Krieger wanted nothing to do with payment. Vlosic submits that, by the time she learned of the vehicle's location, the sum of $6,200 in storage fees had been incurred. Vlosic confirms that she refused to pay McDanel any amount, and explains that, based on her refusal to pay, McDanel refused to release the vehicle. Vlosic additionally claims that the vehicle was not left on McDanel's property because she could remove the vehicle from the storage facility upon payment of the storage fees in advance.

Vlosic additionally argues that the trial court's finding that the Estate requested the vehicle to be towed so that the property could be sold is not supported by the record. Vlosic maintains that there was no estate on July 29, 2021, when McDanel towed the vehicle, because Frances was still alive on that date. Vlosic points out that Frances did not die until almost four months later, on November 24, 2021. According to Vlosic, Frances' home was not sold until four months after McDanel had taken possession of the vehicle.

---

[1] Vlosic argues that the only authority under which McDanel could have acted as a salvor in this case is 75 Pa.C.S.A. § 7311.1, which pertains to vehicles left on private property *without* the property owner's consent. Here, as the vehicle had been on Frances' property *with* her consent, section 7311.1 is inapplicable.

The trial court considered Vlosic's abandonment-related issues and determined that they lacked merit. The court reasoned:

At the hearing held on October 24, 2023, Justin McDanel, who is the sole member for McDanel's . . . testified he is registered in the Commonwealth of Pennsylvania as a tow truck operator and a salvor. When the vehicle was retrieved, [McDanel] was acting as a tow truck operator to simply transport and store the vehicle. However, the vehicle remained in storage with [McDanel] for an extended period of time[,] and while [McDanel] and [Frances'] Estate . . . attempted to resolve the issue of payment, [Vlosic] was uncooperative. Ultimately, no one tendered payment for the towing charges or storage fees. The vehicle remained stored in property owned by [McDanel] for significantly longer than [twenty] days and no one made a serious attempt to retrieve it.

The Court did not rule the vehicle was abandoned when initially retrieved by [McDanel], but the vehicle became abandoned when [Vlosic] failed to make any reasonable effort to retrieve the vehicle. In fact, [Vlosic] testified she only made "halfhearted attempts" to retrieve the vehicle. It is important to recognize the Estate . . . offered to pay [McDanel] for the charges incurred and [Vlosic] still failed to make any arrangements to obtain possession of the vehicle. [Vlosic] was entirely uncooperative with either party.

The record demonstrates [McDanel] was initially providing towing and storage services concerning the subject vehicle. However, [Vlosic's] failure to pay for those services along with the refusal or inability to retrieve the vehicle indicated the vehicle was abandoned. An individual who possesses no intention to retrieve a vehicle under the conditions imposed upon it by the totality of the circumstances can be considered to have abandoned that vehicle to those circumstances. In this case, [Vlosic] abandoned the vehicle to [McDanel] by refusing or otherwise failing to make the payment on the charges incurred for [McDanel's] services and by not making arrangements to transport the vehicle to Arizona.

Thus, the court did not err in determining [McDanel] is a salvor, the vehicle remained on [McDanel's] property for more than [twenty] days and [McDanel] was entitled to relief concerning the petition for the involuntary transfer of a motor

vehicle.

Trial Court Opinion, 12/4/24, at 5-6 (unnecessary capitalization omitted).

Viewing the evidence in the light most favorable to McDanel, as the prevailing party, we discern no error by the trial court in reaching its determination that the vehicle was abandoned, which is amply supported by the record. At the time it was towed by McDanel, the vehicle remained titled to and owned by Frances. Upon her death, such ownership passed to her Estate, which was administered by Krieger. The Estate initially offered to pay the accumulating storage fees charged by McDanel in order to have the vehicle released to Vlosic. However, the Estate withdrew that offer after one year of storage. Although the Estate granted Vlosic permission to retrieve the vehicle from McDanel's storage facility, she declined to pay the storage fees necessary for such retrieval. Thus, as neither the Estate nor Vlosic wished to pay any amount to recover the vehicle, it consequently remained at McDanel's facility for nearly two years and was therefore presumptively abandoned. Vlosic offered no evidence to rebut these facts. Instead, she provided evidence and testimony unrelated to the central inquiry raised in the petition for the involuntary transfer of the vehicle to McDanel based on presumptive abandonment. Thus, as the record is clear that the vehicle remained on the private property of McDanel, a registered salvor, for more than twenty days, and Vlosic failed to overcome the presumption of abandonment, we affirm the

trial court's order granting the petition for the involuntary transfer of the vehicle to McDanel.

Order affirmed.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

6/24/2025